UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CIVIL ACTION NO. 12-28-JBC

LORETTA STEWART,                                                                        PLAINTIFF,

V.

MICHAEL J. ASTRUE, COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION,                                          DEFENDANT.

\* \* \* \* \* \* \* \* \*

This matter is before the court upon cross-motions for summary judgment on Loretta Stewart's appeal of the Commissioner's denial of her application for Disability Insurance Benefits ("DIB") (R. 10, 11). The Court will grant Stewart's motion in part and deny it in part and will deny the Commissioner's motion. This case will be remanded to the ALJ for further findings on the issues presented below.

At the time of her disability filing, Loretta Lynn Stewart was a 45-year-old woman with an eighth-grade education. AR 32. She has no past relevant work. AR 22. On March 20, 2009, Stewart applied for Disability Insurance Benefits (DIB), alleging disability beginning on March 1, 1991, AR 15, due to back pain, knee pain, eye problems, and problems understanding. AR 150. Her claim was denied initially on August 11, 2009, AR 55, and upon reconsideration on September 14, 2009. After a hearing on March 29, 2010, Administrative Law Judge Tommye C. Mangus determined that Stewart was not under a disability within the meaning of the Social

1

Security Act. AR 15-24. Under the traditional five-step analysis, *see Preslar v. Sec'y of Health and Human Servs*., 14 F.3d 1107, 1110 (6th Cir. 1994; *see also* 20 C.F.R. § 404.1520, the ALJ determined that Stewart had not engaged in substantial gainful activity since March 20, 2009, the application date, AR 17; that she has severe impairments of borderline intellectual functioning, reading disorder, anxiety disorder, history of polysubstance dependency, right knee osteoarthritis, and mild scoliosis of the lumbar spine, AR 17; that her impairments or combination of impairments did not meet or equal any listing in the Listing of Impairments, considering especially Listing 12.05, AR 17; that although Stewart has no past relevant work, she has the Residual Functional Capacity (RFC) to perform light work as defined in 20 CFR 416.967(b) with some additional limitations, AR 19; and that jobs exist in significant numbers in the national economy that Stewart can perform. AR 23. The ALJ therefore denied Stewart's claim for DIB on August 6, 2010. AR 24. The Appeals Council denied Stewart's request for review on December 28, 2011, AR 1-3, and she commenced this action.

Stewart challenges the ALJ's ruling on the ground that the ALJ erred in ruling Stewart not disabled when she meets the requirements of Listing 12.05C of the Listing of Impairments.

In order to meet the 12.05C standards for mental retardation, a claimant must first prove that she has "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e. the evidence demonstrates or supports onset before age

2

22." 20 C.F.R. 416.920(d), 20 C.F.R. Pt. 404, Subpt. P, App.1. In addition to this requirement, the claimant must establish the required level of severity by satisfying factors A, B, C, or D. *See id.* Stewart argues that her symptoms of mental retardation began before age 22 as evidenced by her assignment to special education classes, and that she meets the requirements of paragraph C because she has a valid verbal IQ score of 67 and other impairments that pose significant work-related limitations of function. R 10.

The ALJ's conclusion is not based on substantial evidence because it is unclear whether Stewart meets Listing 12.05C. It is unclear whether the ALJ fulfilled her commitment to request Stewart's school records, and whether those records, if collected, would provide evidence of mental retardation during Stewart's developmental period. AR 18, 51. If the records are requested and received, and if they provide such evidence, then the ALJ must continue the analysis as directed.

The ultimate issue in this case is whether there exists proof of mental retardation during the developmental period, or before the age of 22. As a general matter, Stewart, not the ALJ, must show by clear and convincing evidence that she is disabled, *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1232 (6th Cir. 1993), specifically that she experienced difficulties in adaptive functioning due to mental retardation during her developmental period. *West v. Com'r Soc. Sec. Admin.*, 240 F.App'x 692, 698 (6th Cir. 2007). It is not enough for Stewart to offer her present IQ scores as evidence. *Turner v. Comm'r of Soc. Sec.,* 381 F.App'x 488, 491 (6th Cir. 2010).

However, the ALJ assumed a duty to investigate in this case. She specifically stated at the hearing, "I'm going to get my office to contact Pulaski County schools, Mr. Murphy, and see if we can get anything from them . . . ." AR 51. Having committed to investigate the school records, the ALJ should have done so, and it is unclear from her opinion whether her office actually requested the records. AR 18. She simply states that ". . . the record was held open to allow the records to be requested and submitted. No records were received." AR 18. Also at the hearing, Stewart's attorney stated: "We don't have any reason to doubt the special ed that she testified to," to which the ALJ replied, "I agree and I do think she has a reading disorder." AR 50. The ALJ, however, wrote that Stewart's statements were not entirely credible. AR 21. It is within the purview of the ALJ to make findings on credibility, 20 C.F.R. § 404.1529(a); however, the record is unclear as to whether the ALJ believed that Stewart's statements about attending special education classes were entirely credible or evidenced a mental disability. Consequently, there is not substantial evidence to support the ALJ's conclusion that Stewart did not have an IQ deficit before age 22. This case will be remanded to the ALJ to resolve this question.

Should the ALJ receive the school records and conclude that Stewart's mental retardation manifested itself and affected her adaptive functioning during her developmental period, the ALJ must then analyze the severity requirements of Paragraph C. Paragraph C requires that the plaintiff have "a valid verbal, performance, or full scale IQ of 60 through 70, and a physical or other mental

4

impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App.1.

The ALJ concluded that Stewart has a diagnosis of borderline intellectual functioning, not mild mental retardation, based on Dr. Reba Moore's diagnosis. AR 18. Borderline intellectual functioning is "mutually exclusive of mental retardation." *See Jordan v. Comm'r of Soc. Sec.*, No. 11-14439, 2012 WL 1371002 at *2 (11th Cir. April 20, 2012) (slip op.) (citing American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders,* 47-48, 741 (2000) (DSM IV). In cases where more than one IQ score has been derived from the test administered, however, "the lowest of these is used in conjunction with listing 12.05." *Abbott v. Sullivan,* 905 F.2d 918, 925 (6th Cir. 1990), 20 C.F.R. 416.920(d). Here, Dr. Moore performed the WAIS-III test, which resulted in multiple IQ scores: a Full Scale IQ score of 71, indicating borderline intellectual functioning, a Verbal IQ score of 67, within the range for mild mental retardation, and a Performance IQ score of 80, also in the borderline range. AR 235-37. As Stewart has a valid IQ score within the mild mental retardation range (60-70), *Abbott* provides that she has met the requirements of Paragraph C. AR 235.

The ALJ may also consider other medical and laboratory findings and information from other sources when determining whether a claimant meets the requirements for disability. 20 C.F.R. § 404.1529(a). Here, based on the medical records, the ALJ concluded that Stewart has severe impairments of reading disorder, anxiety disorder, history of polysubstance dependency, right knee

5

osteoarthritis, and mild scoliosis of the lumbar spine. AR 17, 21. The ALJ also stated that Stewart's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. AR. 21. Further, the ALJ stated that Stewart's testimony on activities such as playing bingo on the computer, performing household chores, and paying bills contradict a finding of mild mental retardation. AR 18. However, in a similar case, such factors as the claimant's ability to use public transit, possess a driver's license, visit friends, make change, do laundry, and clean, were not inconsistent with a valid test IQ of 68. *See Brown v. Sec'y of Health and Human Servs.,* 948 F.2d 268, 270 (6th Cir. 1991). Similarly, the findings mentioned in this case are not inconsistent with Stewart's IQ score.

Additionally, the ALJ is to evaluate the second prong of 12.05C's severity requirement: that there be an additional physical or other mental impairment imposing an additional and significant work-related limitation of function. The ALJ made findings as to whether Stewart's physical impairments are totally disabling, AR 21-22; however, she must analyze these impairments in the less stringent context of 12.05 upon remand. Accordingly,

**IT IS ORDERED** that the Commissioner's motion (R 11) is **DENIED.**

**IT IS FURTHER ORDERED** that Loretta Lynn Stewart's motion (R. 10) is **GRANTED IN PART** and **DENIED IN PART.** The case is **REMANDED** to the ALJ to decide the following issues: 1) The ALJ must attempt to obtain Stewart's school records and make findings as to whether she meets the introductory requirement of

Listing 12.05 based upon those records; 2) If the ALJ concludes that the school records demonstrate that the introductory requirement of 12.05 is met, she must then analyze the severity requirement of 12.05C, namely whether Stewart has a physical or mental impairment that imposes an additional and significant work-related limitation of function; and 3) If the school records are requested and not received, then the ALJ may deny benefits.

Signed on July 26, 2012



JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY